898 F.2d 357
 Medicare&Medicaid Gu 38,438
WEST VIRGINIA UNIVERSITY HOSPITALS, INC.
v.
Robert CASEY, Governor, Commonwealth of Pennsylvania; John
White, Secretary, Department of Public Welfare; David S.
Feinberg, Director, Office of Medical Assistance; the
Department of Public Welfare, Appellants.
 No. 89-5165.
 United States Court of Appeals,
Third Circuit.
 Submitted Dec. 5, 1989.
Decided March 12, 1990.
 
 Ernest D. Preate, Jr., Atty. Gen., Jerome T. Foerster, Deputy Atty. Gen., Calvin R. Koons, Sr. Deputy Atty. Gen., John G. Knorr, III, Chief Deputy Atty. Gen., Chief, Litigation Section, Harrisburg, Pa., for appellants.
 Robert T. Adams, Thomas J. Stallings, McGuire, Woods, Battle & Boothe, Richmond, Va., Julia Krebs-Markrich, McGuire, Woods, Battle & Boothe, Washington, D.C., Jack M. Stover, Mette, Evans & Woodside, Harrisburg, Pa., for appellees.
 Before BECKER, STAPLETON, and ROSENN, Circuit Judges.
 SUR MOTION FOR ATTORNEYS' FEES AND COSTS
 ROSENN, Circuit Judge.
 
 
 1
 On July 6, 1986, West Virginia University Hospitals, Inc. (WVUH or the Hospital) commenced an action against the Governor of the Commonwealth of Pennsylvania and various other officials (the State) pursuant to 42 U.S.C. Sec. 1983. In the action WVUH sought injunctive and declaratory relief invalidating the out-of-state aspects of Pennsylvania's hospital reimbursement program, as well as reasonable attorneys' fees, including expert witness fees, and costs. WVUH claimed that Pennsylvania's medicaid prospective payment system as it applied to the plaintiff violated federal law. The litigation dealt with certain issues which had not been previously litigated and involved complex issues of state and federal medicaid reimbursement law and statutory and constitutional challenges to Pennsylvania's administrative system. On November 30, 1988, the district court entered an order in favor of the Hospital on all significant issues and awarded WVUH substantially the prospective relief requested, as well as attorneys' fees (including expert witness fees) and costs.
 
 
 2
 Subsequent to that litigation, WVUH applied to the district court for attorneys' fees and following negotiations the parties agreed on the sum of $350,000, which the court approved. The defendants filed a timely appeal with this court vigorously challenging the major aspects of the district court's decision. After oral argument and review of the briefs and record, we rendered our decision on September 5, 1989, affirming the district court's judgment that Pennsylvania's medicaid prospective system as applied to plaintiff violated federal law, but reversing the district court's declaration that Pennsylvania's administrative appeals system as it applied to WVUH violated federal law and the award of retroactive relief. We also vacated the award for expert witness fees insofar as it allowed a sum in excess of thirty dollars per day. We denied WVUH's petition for rehearing.
 
 
 3
 Based on our decision, we now have before us the Hospital's application as amended for attorneys' fees in the sum of $132,737.47 and $7,394.37 in disbursements in connection with the appeal to this court. The State opposes the application with numerous objections which, although they do not raise the request for fees and costs to the same level of complexity as the underlying litigation, nonetheless present the trappings of major litigation. We grant the motion in part.
 
 I.
 
 4
 WVUH claims that it is entitled to the fees requested before this court because it prevailed on the appeal within the meaning of 42 U.S.C. Sec. 1988. It asserts that the essential question in its lawsuit and on appeal was whether Pennsylvania's medicaid prospective payment system, as it applied to WVUH, complied with federal law. It prevailed in the resolution of this issue in both the district court and on appeal in this court. WVUH acknowledges that we reversed the district court's determination declaring invalid the legality and adequacy of Pennsylvania's administrative appeals system as well as the district court's award of relief retroactive to the filing of the lawsuit. West Virginia University Hosp., Inc. v. Casey, 885 F.2d 11 (3d Cir.1989). We also vacated the district court's decision allowing expert witness fees of $104,103.00 under 42 U.S.C. Sec. 1988. The Hospital, however, contends that the administrative appeals issue "is subordinate to the central issue" concerning the legality and adequacy of the prospective payment system, and the expert witness fee issue is tangential to the substantive claim concerning the legality and adequacy of Pennsylvania's medicaid prospective system, and arose solely from the question of the total amount of attorneys' fees to be awarded. The Hospital maintains that it has protected its essential legal rights, "will obtain major and permanent changes in Pennsylvania's reimbursement practices," and has thus obtained the "primary relief" it sought. WVUH therefore concludes that it is the prevailing party for purposes of 42 U.S.C. Sec. 1988 and is entitled to all of the attorneys' fees and disbursements requested on the appeal to this court and in connection with earlier efforts to enforce compliance with the judgment of the district court.
 
 
 5
 The State, responding to the Hospital's application, has raised numerous objections. They may be summarized as follows:
 
 
 6
 (1) WVUH is not entitled to attorneys' fees in the sum requested because on appeal it lost on "three significant issues": the administrative appeals issue, the retroactivity issue, and the expert witness fees issue. Therefore, the State contends the request for fees should be reduced by seventy-five percent.
 
 
 7
 (2) This court may not award fees on a direct motion to this court for WVUH's efforts to enforce compliance with the district court's judgment because those services were not rendered in the court of appeals. Specifically, the State challenges fees for WVUH's unsuccessful Rule 70 motion in the district court and for WVUH's efforts to enforce compliance with the district court judgment.
 
 
 8
 (3) No award should be made for items that represent an unnecessary duplication of effort by multiple counsel.
 
 
 9
 (4) No award can be made for numerous items of alleged service when the individual entries in the plaintiffs' supporting exhibits lack necessary specificity.
 
 
 10
 (5) Miscellaneous items of disbursement for telephone, duplicating, and other office expenses were either unnecessary or excessively expensive.
 
 II.
 
 11
 The major issue before us pertains to the State's request for a reduction of attorney's fees under the principles enunciated in Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), because the plaintiff, WVUH, did not prevail on all the issues raised on appeal. In Hensley, the Supreme Court held that courts must assess the claims advanced and the results achieved by the prevailing party when determining what is a "reasonable" attorney's fee under 42 U.S.C. Sec. 1988. Under Hensley, attorneys are not to be compensated for time spent on claims which are unrelated to successful claims. Id. at 435, 103 S.Ct. at 1940. However, "where a lawsuit consists of related claims, a plaintiff should not have his attorney's fees reduced simply ..." because some related claims are unsuccessful. Id. at 440, 103 S.Ct. at 1943. The court must consider whether the results obtained by the prevailing party justify an award of attorney's fees for hours spent on related but unsuccessful claims. Hensley at 435, 103 S.Ct. at 1940. When the relief obtained is excellent, the prevailing party may recover fees for "all hours reasonably expended on the litigation." Id. at 436, 103 S.Ct. at 1941. If the prevailing party does not obtain substantial but only partial relief, a full award of fees for all hours spent on related, unsuccessful claims would be excessive. Hensley at 440, 103 S.Ct. at 1943.
 
 
 12
 There can be no doubt that the central issue on appeal, as it was in the district court, was whether Pennsylvania's formulation for reimbursing out-of-state hospitals for their inpatient services to Pennsylvania medicaid recipients violated federal statutory and regulatory law. WVUH prevailed on this issue. The plaintiff argues that the claims in this appeal are related because they emanate from a common core of facts and are based on related legal theories. It asserts that each of the claims raised on appeal cannot be reasonably viewed as "distinct in all respects" from the central issue in the case and it is, therefore, entitled to a full compensatory award. Not surprisingly, the defendants have a different perspective of the Hospital's case. They contend that the issue on which WVUH prevailed was separate and distinct from the claims it lost on appeal. Although the State concedes that all of the issues may have been intertwined at the district court level, that was not the situation before this court. Having prevailed on only one of four issues, the State concludes that the Hospital's fee award should be reduced by seventy-five percent.
 
 
 13
 Regrettably, except for conclusory statements, neither of the parties provides us with any assistance in determining whether the claims are related or are separate and distinct from the principal claim on which WVUH prevailed. One useful "starting point" for separating an unrelated, unsuccessful claim from a related unsuccessful claim is to determine whether a particular unsuccessful claim shares a "common core of facts" with the successful claim or is based on a "related legal theory." Hensley, 461 U.S. at 435, 103 S.Ct. at 1940. The Court in Hensley also instructs us to interpret "related claims" broadly. Nonetheless, when the plaintiff has not prevailed on a claim "that is distinct in all respects from his successful claim," time spent on the unsuccessful claim "should be excluded in considering the amount of a reasonable fee." Hensley at 440, 103 S.Ct. at 1943. With these principles in mind, we address the claims which were advanced unsuccessfully by WVUH on appeal.
 
 III.
 A. The Administrative Appeals Issue
 
 14
 On appeal, WVUH lost on its claim concerning the legality of Pennsylvania's administrative appeals system and appropriately asserts that this claim is subordinate to the central issue, the legality and adequacy of the prospective payment system. The defendants assert that both parties considered the issue significant because it related to the district court's grant of retroactive relief. The immediate consideration before us, however, is not so much whether the claim is subordinate, but whether it is related to the successful claim for relief.
 
 
 15
 Whether the Pennsylvania administrative appeals issue is related to WVUH's attack on the alleged violations of Title XIX of the Federal Medicaid Act may be a close question. However, we conclude that the relationship, if any, is remote and that the issue is discrete. WVUH argues that a relationship exists between the two issues because a successful challenge to the administrative appeals system might have opened an avenue for alternative relief. We reject this argument.
 
 
 16
 We see the factual matrix to the legality of Pennsylvania's administrative appeals system as totally different from the successful challenge to the validity of Pennsylvania's hospital reimbursement program for medicaid services. Pennsylvania's reimbursement plan and its statutes and regulations setting up an administrative appeals system deal with different subjects. The first sets up a specific medical assistance and reimbursement program; the latter creates a state procedural structure applicable to the administrative appeals generally within the Commonwealth. The legal theory and analysis pertaining to each is different. The issues involve two different aspects of the administration of the Commonwealth's medicaid program, governed by different provisions of the Federal Medicaid Act. In essence, we are asked to construe two different statutes, each treating totally different subjects. We therefore reject the plaintiff's claim that it is entitled to a fee amount with respect to its unsuccessful administrative appeals issue. In our judgment, a 15 percent disallowance of the fee requested on the appeal, excluding services pertaining to the post-argument brief which were unrelated to the issue, is reasonable. In our computation, infra, for the attorneys' fees allowance on appeal, we will deduct 15 percent, excluding services pertaining to the post-argument brief.
 
 
 17
 B. The Retroactivity and Eleventh Amendment Issue
 
 
 18
 The district court awarded relief retroactive to the day WVUH commenced its lawsuit against the defendants. We reversed and instead ordered relief from the date of the court's initial judgment. The State's position is that this issue was of great significance to it and to WVUH, requiring significant time and effort from WVUH, and that the services the Hospital devoted to this issue should not be compensated. However, we will not dwell long on this issue because obviously the date the relief commences is directly related to WVUH's principal claim; the retroactivity claim had a direct effect on the claim for damages.
 
 
 19
 Given the relatedness of the retroactive claim to WVUH's successful claims, the court's "rejection" of WVUH's retroactive claim "is not a sufficient reason" for reducing its attorneys' fees. Hensley at 435, 103 S.Ct. at 1940. On the contrary, we are to assess the appropriateness of a fee award by "focus[ing] on the significance of the overall relief obtained by the plaintiff." Id. The Hospital's retroactive claim was related to the principal issue upon which it obtained substantial relief. Therefore, we exercise our discretion and award attorney's fees for all hours reasonably spent on the retroactive claim. See Hensley at 437, 103 S.Ct. at 1941. The State's contention that the plaintiff is not entitled to a fee award with respect to this issue is rejected.
 
 C. Expert Witness Fees
 
 20
 Although the defendants stipulated that WVUH's experts were indispensable to their case, the plaintiff claimed and obtained in the district court an award of expert witness fees in the sum of $104,133.00. The State argued, on appeal, as they did in the district court, that the amount of expert witness fees allowed improperly exceeded the statutory maximum of thirty dollars per day under 28 U.S.C. Sec. 1821(b). We reluctantly concluded that the defendants were correct and vacated the district court's judgment awarding attorneys' fees insofar as it awarded WVUH expert witness fees in excess of thirty dollars per day.
 
 
 21
 In its application for attorneys' fees in this court, WVUH describes this issue of expert witness fees as "tangential" to its principal claim. Although WVUH concedes that this issue "is arguably unrelated to the claims presented," it asserts that it should prevail on this issue too because the issue is directly related to the overall request for reimbursement of attorneys' fees. We disagree. We believe that the matter of the sum to be awarded as expert witness fees under 42 U.S.C. Sec. 1988 is an issue separate and distinct from the primary issue on which the plaintiff prevailed and thus "unrelated" to it. Of course, the claims for expert witness fees arise out of this litigation, but this does not mean that they are per se directly related to the primary legal issue on which the plaintiff prevailed.
 
 
 22
 Whether expert witnesses are limited in their claim for fees to thirty dollars per day as provided by statute or may claim fees in a section 1983 suit without regard to the statutory limitations contained in 28 U.S.C. Sec. 1821(b) is a matter not related at all to the plaintiff's legal challenge to Pennsylvania's medicaid payment system. How much is to be paid an expert witness is common to any civil suit in which expert witnesses are called, and it has no special bearing on the principal issue on which the plaintiff prevailed. The plaintiff's claim for attorneys' fees for services pertaining to this issue will therefore be rejected.
 
 
 23
 The burden of proving entitlement to reimbursement is upon the applicant. It is difficult to ascertain the precise number of hours and services performed on this issue from the exhibits attached to plaintiff's application, notwithstanding the more than 800 bookkeeping entries set forth therein. The State would have us simply make a mathematical deduction of 25 percent of the fees claimed because WVUH lost on this one of four issues. We think this is too simplistic and unrealistic. We have taken what we regard as a more pragmatic approach. We have noted that plaintiff's counsel spent a certain amount of time and effort in researching the issue in the district court in connection with the application for attorney's fees and expert witness fees in that court. This reduced the amount of time required in researching and briefing the issue in this court. The question was not complex and although the amount of witness fees requested exceeded $100,000, the issue was the most subordinate of those presented on appeal. In our judgment, a ten percent disallowance of the fee requested on the appeal, excluding services pertaining to the post-argument brief which had nothing to do with this issue, is reasonable. In our computation infra for the attorneys' fees allowance on appeal, excluding services in connection with the post-argument brief, we will deduct ten percent.
 
 
 24
 D. Services to Enforce Compliance with the District Court's Judgment
 
 
 25
 The plaintiff has also submitted to this court a request for a fee award combining a large variety of services it represents was performed in implementing the judgment of the district court, including preparation for and meeting with Pennsylvania medicaid officials, analysis of the Pennsylvania State Plan Amendment submitted to the United States Department of Health & Human Services, preparation of a brief in opposition to the application to the district court for a stay pending appeal, preparation of a Rule 70 motion and supporting brief with the district court to enforce its judgment. Although the State does not object to the hourly rate claimed for each lawyer, it challenges the number of hours claimed and expenses incurred because those services were not involved in the appeal to this court.
 
 
 26
 An appellate court is not in a position to review a dispute with respect to post-judgment legal or related services performed in the district court, or with respect to the enforcement or implementation of that court's judgment unless the district court has made the requisite findings of fact. It would be highly presumptuous and far from prudential for an appellate court acting on a motion for fees relating to an appeal before it to also adjudicate disputed issues of fact on matters not involved in the appeal, and on which the district court had no opportunity to pass judgment.
 
 
 27
 The district court entered its memorandum opinion and order on November 30, 1988. However, final judgment was not entered until January 31, 1989. Nonetheless, commencing on November 30, 1988, with an entry of $120 charge for a telephone call relating to the district court's decision, fees and costs are requested throughout the numerous entries in plaintiff's exhibits 1 and 2 for services not relating to the appeal in this court. In fact, a considerable sum is even requested for services and expenses in connection with the request for attorneys' fees in the district court and the joint stipulation ultimately reached in connection therewith. Also, attorneys' fees are requested for conferences with the Pennsylvania Department of Welfare, and expenses related thereto. We obviously have no way of assessing whether these services and expenses were required, are reasonable, and whether they were compensated in the fee award made by the district court. For example, an item on December 12, 1988, requesting $450 in attorneys' fees for a telephone call between plaintiff's attorney, Ms. Krebs-Markrich, and other counsel appears to relate to the fee proposal in the district court.
 
 
 28
 Only the district court is in a position to know whether any of the services for which compensation is sought here were included in the stipulated fees allowed by it of $350,000. If an evidentiary hearing must be conducted as to the other items sought in enforcing the judgment, the district court should conduct it and make the necessary findings. We see no plausible basis for this court to adjudicate these disputed claims and we will not pass upon them. We have reviewed each of the cases cited by the plaintiff, namely Burke v. Guiney, 700 F.2d 767 (1st Cir.1983); Northcross v. Board of Educ., 611 F.2d 624 (6th Cir.1979), cert. denied, 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980); and Prandini v. National Tea Co., 585 F.2d 47 (3d Cir.1978). None of these cases provides us with any precedent to support the award requested. Furthermore, WVUH did not prevail on its Rule 70 motion in the district court.
 
 
 29
 We are optimistic that in light of the ability and skill of counsel for the parties to agree upon a fair sum for attorneys' fees in the much larger claim for trial fees in the district court, they will reach an agreement with respect to attorneys' fees for the post-judgment services rendered without the need to invoke an evidentiary hearing in the district court.
 
 
 30
 E. Duplication of Effort by Multiple Counsel and Unnecessary Services
 
 
 31
 The State objects to $11,121.50 requested in fees by plaintiff on the ground that these services were duplicative and unnecessary. The plaintiff counters by asserting that given the complexity of the issues and the size of the record, it was not unreasonable to have the two principal attorneys from Virginia present at the oral argument. WVUH also notes that due to our expedition of the briefing and oral argument, counsel for WVUH had less time than usual to prepare for argument and, therefore, had divided the work on appeal. Furthermore, it asserts that local counsel were necessary because of their familiarity with practice before this court.
 
 
 32
 It seems that an extraordinary amount of time was consumed by appellee's counsel in the preparation of an appellate brief pertaining to a case which they had tried, researched, and briefed in the district court. Furthermore, the appellants had the laboring oar in framing the issues on appeal and preparing the appendix. Nonetheless, we are unable to say that multiple counsel were unnecessary or that the hours consumed were unreasonable. We did order expedited briefing and oral argument; the issues were complex.
 
 
 33
 On a prior occasion we noted the thin line that may exist between a reasonable and unreasonable expenditure of time in pursuit of a client's cause. We also reminded counsel that members of the bar are officers of the court and that they should demonstrate the same level of billing judgment and sensitivity in fee shifting situations as they do with their own private clients.
 
 
 34
 The courts frequently must rely not only upon the accuracy of the record keeping but upon the intellectual honesty of counsel in the allocation of hours worked and in the measurement of time. Lawyers must therefore exercise care, judgment, and ethical responsibility in the delicate task of billing time and excluding hours that are unnecessary. Such consideration may not be abandoned because fee responsibility is shifted under 42 U.S.C. Sec. 1988.
 
 
 35
 Hall v. Borough of Roselle, 747 F.2d 838, 841-42 (3d Cir.1984). In the absence of evidence to the contrary, we choose to believe that counsel were intellectually honest with the court and their opponents and properly allocated the hours worked and the measurement of time.
 
 
 36
 With respect to the presence of multiple counsel at oral argument, we think that more than two counsel was unnecessary. In addition to Mr. Adams, who argued the appeal for WVUH, perhaps one additional lawyer may have been necessary in an appeal of this complexity at oral argument to assist and to refer to the record or briefs. We will allow fees for the two principal attorneys present at oral argument, Adams and Krebs-Markrich.
 
 
 37
 As to the presence of local counsel at oral argument, we do not believe that the rules of practice of the Third Circuit are so unique or dissimilar from the rules of the Fourth Circuit, where principal counsel have their offices, as to also require the presence of local counsel. Furthermore, Mr. Adams and his partner appropriately familiarized themselves with the rules of this court. We will allow a reasonable amount for this purpose. However, they have charged what appears to be approximately seven hours of time aggregating $1,190.00 for familiarizing themselves with our court rules in connection with filings and oral argument. We believe that seven hours for seasoned and experienced counsel to familiarize themselves with our appellate rules are grossly excessive. We will allow $300.00. Under the circumstances, we see no reasonable basis for the additional presence of local counsel at oral argument in this court. The sum of $400.00 requested in fees for local counsel at oral argument and $277.73 for his lodging and expenses will be disallowed.
 
 
 38
 The State also objects to charges by Attorneys Adams, Krebs-Markrich, and Stover relating to meetings with the Pennsylvania Department of Public Welfare in Harrisburg, Pennsylvania, on the grounds that the charges are duplicative and there was no need for more than one attorney for this purpose. We do not reach this issue because we have already rejected these items because the services were not relevant to the appeal in this court.
 
 
 39
 At oral argument, the court requested counsel for WVUH to supplement their brief with a memorandum on the standing of the Hospital to seek relief under 42 U.S.C. Sec. 1983 for violation of the Social Security Act governing hospital reimbursement and whether the eleventh amendment barred retroactive relief from the date of filing the lawsuit. We are able to identify 138.10 hours in plaintiff's exhibit as time spent on the post-argument brief. These hours include cite checking, instant citing, reviewing, and editing. The total fee request for this time is $17,423.00. Although these charges seem high, and as many as three lawyers charged for services performed on the same day, we cannot say that these services were duplicative or unnecessary. Counsel were under time constraints to submit the brief after oral argument and it is understandable that under such circumstances more than one lawyer might be engaged at the same time in the research and drafting. Furthermore, the issues addressed were very complex, involved extensive research, and the study of numerous cases. The request for fees for the post-argument briefing will be allowed.
 
 
 40
 F. Miscellaneous Items of Disbursement for Telephone,
 
 Duplicating, and Other Office Expenses
 
 41
 The State contends that the plaintiff seeks payment for courier travel to pick up and deliver documents when the United States mails should have been used. Plaintiff responds that it utilized hand delivery to give sufficient preparation time because the court ordered expedited briefs and oral argument, and to ensure compliance with mandatory deadlines. We assume that as officers of the court, counsel will not unnecessarily incur useless expense in courier services if mail services will suffice merely because costs are being shifted. Under the circumstances, we cannot say that the use of courier service in the filing of the principal briefs and appendix in this court was unreasonable. The objection to this charge will be denied. However, we do not believe that the State should bear courier charges for the filing of the post-argument brief or other documents in this court. Although there were some time constraints, the court allowed plaintiff twice as much time (one month) for its supplemental memorandum as the State and we see no need for the use of courier service for the filing of the post-argument brief or other documents when overnight federal express service would have sufficed.
 
 
 42
 As for telephone, duplicating, and word processing expenses, the State claims that these charges are components of the lawyers' hourly rate. Long distance telephone calls are ordinarily not office overhead and the State offers no authority or plausible argument that they should be so regarded. Photocopying, like long distance calls, is not customarily regarded as overhead and is part of the reasonable attorneys' fee allowed by the Civil Rights Attorneys' Fee Award Act. See Heiar v. Crawford County, 746 F.2d 1190, 1203 (7th Cir.1984), cert. denied, 472 U.S. 1027, 105 S.Ct. 3500, 87 L.Ed.2d 631 (1985). Similarly, we believe that they are also allowable under 42 U.S.C. Sec. 1988.
 
 
 43
 Unfortunately, we are unable to determine whether the photocopying and long distance calls pertain to matters in the district court or this court. In fairness to the prevailing party, we struggled to ascertain from the record, whenever possible, whether charges were related to matters before this court. The applicants, however, did not provide adequate information. Nonetheless, reasonable inferences were made in favor of the appellees even when we were not totally positive that charges were related to the appeal. However, we can make no inference from bare descriptions of "long distance" or "xeroxing," particularly when we are aware that the prevailing party was, throughout the relevant time period, engaged in other matters unrelated to the appeal in this court, e.g., negotiations with the Pennsylvania Department of Public Welfare. Therefore, virtually all of the claims for photocopying and telephone calls will be denied.
 
 
 44
 As for the numerous word processing charges, word processing in the modern law office is an accepted technology and considered indispensable for effective and efficient office service. For the most part, word processing has supplanted the typewriter and is considered an indispensable piece of office equipment in an efficient, up-to-date law office. Like the typewriter in its time, word processing equipment today expedites the work of the secretary and accelerates the productivity of the law office. It is a depreciable piece of equipment that serves the convenience and efficiency of the lawyer and appropriately may be regarded as part of the lawyer's overhead. Word processing services are generally regarded as an overhead component of a lawyer's fee. We need not, however, decide the question in this case "because the fee application fails to adequately document that such fees are in line with community practice as required by Blum v. Stenson, 465 U.S. 886, 897 at n. 11, 104 S.Ct. 1541, 1547 at n. 11, 79 L.Ed.2d 891 (1983)." In Re Olson, 884 F.2d 1415, 1427 (D.C.Cir.1989). We will, therefore, disallow the word processing charges claimed in connection with this appeal.
 
 G. Items Lacking Specificity
 
 45
 The State contends that WVUH has failed to submit sufficient detail for many charges to enable the court to determine the time spent on the claims in which plaintiff did not prevail and to otherwise inform the court whether the time spent is excessive or otherwise unnecessary. The State further asserts that where the documentation is inadequate to disclose the subject matter of the activity, the hours claimed may not be compensated. Although we do not require absolute precision in a fee reimbursement petition, we do require "some fairly definite information as to the hours devoted to various general activities." Pawlak v. Greenawalt, 713 F.2d 972, 978 (3d Cir.1983), cert. denied, 464 U.S. 1042, 104 S.Ct. 707, 79 L.Ed.2d 172 (1984). On occasion we have disallowed requests for fees when the fee petition inadequately documented the hours claimed. Rode v. Dellarciprete, 892 F.2d 1177 (3d Cir.1990).
 
 
 46
 As already noted, the application for fees and expenses contain in excess of 800 bookkeeping entries. The objections on the ground of non-specificity concern hundreds of these entries, some as minuscule as fifteen cents for photocopying. A court expects, especially in a case where counsel reasonably anticipates that fees will be shifted to the non-prevailing party, that the court will be provided with sufficient supporting data to intelligently make an award. "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence--in addition to the attorney's affidavits--," Blum v. Stenson, 465 U.S. 886, 896, n. 11, 104 S.Ct. 1541, 1547, n. 11, 79 L.Ed.2d 891 (1983), adequately supporting the nature of the charge, even assuming its reasonableness.
 
 
 47
 Regrettably, after wading through hundreds of entries in search of the necessary supporting information in this application, we find numerous entries have little to offer to pass judgment upon them. Moreover, many of the objections are to items which we have already rejected because they are irrelevant to the appellate proceedings in this court. We believe that the pragmatic approach to the resolution of these objections is to focus only on the items that are sufficiently identified and related to the appeal proceedings in this court. We have given the plaintiff the benefit of all reasonable inferences. Nonetheless, there still remain many items which cannot be sufficiently identified to be allowed.
 
 H. The Fee Application
 
 48
 Plaintiff is also entitled to a reasonable fee in connection with the application for fees in this court and in defending such application. Although WVUH has not provided us with any independent supporting information, we have reasonable familiarity with the services rendered and we have carefully reviewed the application, answers, and briefs, and the hourly rate of counsel. We therefore conclude that we can determine the fees to be allowed. We have modified the sum, however, because the applicant has only been partially successful in its application. The sum of $2,250.00 will be allowed.
 
 IV.
 
 49
 In summary, the fee application before us is logically divisible into three phases of services: first, preparation, briefing, and oral argument on the appeal; second, the submission of the post-argument briefing requested by this court; and third, the fee application to this court. WVUH is entitled as the prevailing party on the central issue on the appeal to reasonable attorneys' fees for services rendered in connection with it. The services rendered on this issue were excellent. It is also entitled to reasonable attorneys' fees and expenses on the subordinate issues related thereto, notwithstanding that it did not prevail on them. The court will not award fees or expenses for WVUH's efforts to enforce compliance with or to implement the district court's judgment, including activities in connection with its Rule 70 motion to enforce sanctions. Fees for services will not be awarded that represent any unnecessary duplication of effort by counsel or for disbursements that are unsupported by adequate information. Telephone, photocopying, and word processing expenses will be disallowed. Services pertaining to the claim for expert witness fees are disallowed as this is a separate and distinct issue unrelated to the issue on which the plaintiff prevailed. Plaintiff's claim for attorneys' fees in connection with the fee application will be allowed in the sum of $2,250.00
 
 
 50
 Accordingly, WVUH's application as amended for attorneys' fees will be allowed as follows:
 
 
 51
 1. To McGuire, Woods, Battle & Booth for the first and principal $38,809.00
 phase of the appeal
 Less excess time for study of Third Circuit Rules - 890.00
 ----------
 SUBTOTAL $37,919.00
 Less 15% for administrative appeals issue - 5,687.85
 Less 10% for expert witness fee issue - 3,791.90
 ----------
 ADJUSTED ALLOWANCE $28,439.25
 To Mette Evans and Woodside for phase one of the appeal $ 3,924.00
 Less time spent at oral argument - 400.00
 ----------
 SUBTOTAL $ 3,524.00
 Less 15% for administrative appeals issue - 528.60
 ----------
 Less 10% for expert witness fee issue - 352.40
 ADJUSTED ALLOWANCE $ 2,643.00
2. To McGuire, Woods, Battle & Booth for phase two of the appeal, $16,330.00
 the post-argument briefing
 To Mette Evans and Woodside for phase two 1,923.00
3. For the third phase, fee application $ 2,250.00
4. Allowance for Expenses:
 To McGuire, Woods, Battle & Booth $ 164.80
 To Mette Evans and Woodside 305.00
 
 
 52
 The foregoing award of attorneys' fees and expenses is made without prejudice to plaintiff's right to make supplemental application to the district court for reasonable fees and expenses to which it may be entitled in the post-judgment proceedings in that court.