# United States Court of Appeals
## For the First Circuit

No. 16-1192

ERASMO RODRÍGUEZ-VÁZQUEZ,

Interested Party, Appellant,

JOSÉ LUIS DÍAZ-COLÓN, on his own behalf and on behalf of his minor son J.L.D.R.; LINDA DELGADO, on behalf of her minor daughter D.M.D.D.; ZORAIDA COLÓN-CARTAGENA; PEDRO DÍAZ; PEDRO LUIS DÍAZ-COLÓN; YAHAIRA ENID DÍAZ-COLÓN; LOURDES DE JESÚS-VELÁZQUEZ, on her own and on behalf of her minor children J.L.S.D.; J.L.L.S.D. and L.S.D., on their own and as legal heirs of Leopoldo Sanabria-Díaz; ALBAELA DÍAZ-CARABALLO; LEONARDO SANABRIA-DÍAZ; JENNIFER PIRIS-JUSINO, on her own and on behalf of her minor daughter G.R.P.; LUCY GUZMÁN-BORRERO; CARMELO VELÁZQUEZ-COLÓN; CARMELO COLÓN-RIVERA; ORLANDO COLÓN-VELÁZQUEZ; ORLANDO RAMOS-FÉLIX; JOSEFA FÉLIX; JOSÉ ANTONIO FÉLIX; ELISEO RAMOS-FÉLIX; JUAN MARCOS MERCED-GÓMEZ; HÉCTOR MERCED-RODRÍGUEZ; MARÍA E. GÓMEZ-VELÁZQUEZ; LEOPOLDO SANABRIA-MORALES; MARIBEL ORTIZ-VÁZQUEZ, on behalf of minor, J.M.S.O.; ANA LUISA DÍAZ-RIVERA; YOLANDA ORTIZ-DÍAZ; EVELYN ORTIZ-DÍAZ; LUIS DANIEL ORTIZ-DÍAZ; DIGNO ORTIZ-DÍAZ; FRANCIS I. LÓPEZ-DÍAZ; CHELSEA LUZ MERCED,

Plaintiffs,

v.

ANÍBAL SOLIVAN SOLIVAN; HÉCTOR TIRADO; DANIEL COLÓN; FRANCISCO BÁEZ-QUIÑONES; JESÚS FIGUEROA-CRUZ; JESÚS FIGUEROA DE JESÚS; JOSÉ FUENTES AGOSTINI; DISTRICT ATTORNEY GABRIEL REDONDO; DISTRICT ATTORNEY JOSÉ FIGUEROA-ZAYAS; DISTRICT ATTORNEY JOSÉ CAPÓ; JUAN JOSÉ TOLEDO-BAYOUTH; JOSÉ TOLEDO-BAYOUTH; FERNANDO TOLEDO-BAYOUTH; PEDRO J. TOLEDO-BAYOUTH,

Defendants, Appellees,

FNU CANDELARIA; UNKNOWN POLICE OFFICERS A TO J; DISTRICT ATTORNEY ULPIANO-CRESPO; ESTATE OF ULPIANO CRESPO, comprised of unknown individuals K through S; UNKNOWN DISTRICT ATTORNEYS T THROUGH Z; ZOÉ DÍAZ-COLÓN; CONJUGAL PARTNERSHIP BÁEZ-DOE;

CONJUGAL PARTNERSHIP CAPÓ-DOE; CONJUGAL PARTNERSHIP COLÓN-DOE; CONJUGAL PARTNERSHIP DÍAZ-DOE; CONJUGAL PARTNERSHIP FIGUEROA-DOE; CONJUGAL PARTNERSHIP FUENTES-DOE; CONJUGAL PARTNERSHIP REDONDO-DOE; CONJUGAL PARTNERSHIP SOLIVAN-DOE; CONJUGAL PARTNERSHIP TIRADO-DOE; CONJUGAL PARTNERSHIP TOLEDO-DOE; JANE DOE; JOHN DOES, unknown District Attorneys, Police and Penal Officers,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

---

Before

Torruella, Thompson, and Kayatta,
Circuit Judges.

---

Guillermo Ramos Luiña for appellant.
Susana I. Peñagarícano-Brown, Assistant Solicitor General, Department of Justice for the Commonwealth of Puerto Rico, with whom Margarita L. Mercado-Echegaray, Solicitor General, Department of Justice for the Commonwealth of Puerto Rico, was on brief, for appellees.

---

December 23, 2016

---

**KAYATTA**, <u>Circuit Judge</u>.  In settling a civil lawsuit against public officials, the parties in this case convinced the district court to issue a report that the parties and the district court have treated as a gag order barring the parties from disclosing the terms and conditions of the settlement.  In short order, Erasmo Rodríguez-Vázquez ("Rodríguez"), a lawyer assisting one of the parties, made statements about the settlement to the local press.  Unhappy with the press coverage of their secretive settlement, the public officials who were parties to the settlement obtained an order from the district court holding Rodríguez in contempt and referring him to the Commonwealth of Puerto Rico's Supreme Judicial Court for disciplinary review.  Finding no basis in the record to support the contention that Rodríguez violated any court order, we reverse.

## I.

In 1999, several people were wrongfully convicted of murder based in large part on the allegedly false testimony of one key witness.  See <u>Díaz-Colón</u> v. <u>Fuentes-Agostini</u>, 786 F.3d 144, 145 (1st Cir. 2015).  After one of those people committed suicide in prison, the witness "came forward to recant her testimony, claiming that law enforcement personnel had coerced and bribed her into giving fabricated testimony."  <u>Id.</u>  The criminal defendants appealed to Puerto Rico's Supreme Judicial Court, their convictions were vacated, and the charges against them were

- 3 -

dropped. Rodríguez was appointed to represent one group of the criminal defendants in that appeal; he successfully worked to obtain the reversal of their criminal convictions.

The wrongfully convicted individuals and/or their heirs or assigns brought two suits, consolidated into this single case, against the police officers and prosecutors who had been involved in their prosecutions. Various defendants filed a motion for summary judgment on the basis of absolute or qualified immunity, which the district court denied. On interlocutory appeal, we affirmed the district court's ruling as to all but one defendant, and we sent the case back to the district court in anticipation of trial. See id.

At that juncture, the parties to the civil lawsuit reached a settlement following discussions mediated by a magistrate judge. At the parties' request, the magistrate judge memorialized the settlement--which had not yet been reduced to writing--in a "Fourth Settlement Conference Report." The aptly named "Report" did just that: it reported the terms and conditions of the parties' as-yet-unwritten agreement, including three terms relevant to this appeal: (1) "The settlement agreement shall not signify acceptance of liability regarding the facts alleged in the complaint"; (2) "The parties shall maintain in strict confidentiality all the terms and conditions of the settlement

agreement"; and (3) "The court shall retain jurisdiction to enforce all the terms and conditions of the settlement agreement."

The parties to this appeal, including Rodríguez, treat the Report as if it actually ordered compliance with the terms and conditions it reported. While that reading could be questioned, in the absence of any argument by anyone that the Report was not an order to comply with the terms of the reported settlement, we will assume the parties' shared understanding to be correct. The parties also all assume that the magistrate judge had the power to issue an order enjoining certain prospective conduct, but see 28 U.S.C. § 636(b)(1), so we shall as well, given the parties' apparent unanimous consent, id. § 636(c). Finally, Rodríguez waives any argument that he was not subject to the assumed order.

Four days after the magistrate judge entered the Report, a regional weekly newspaper called El Regional published an article titled, "The circle is closed."[1] The article stated that the plaintiffs achieved victory against the Puerto Rican government by way of settlement, but they were going to receive much less than the ten million dollars they initially sought. The precise amount the plaintiffs would be paid under the settlement was not stated "because of the court's confidentiality agreements," but the paper

---

[1] The article was written in Spanish; this title, along with the excerpted language that follows, is taken from the certified translation to which the district court referred during the contempt hearing.

noted that it would be a small fraction of their claimed damages and it might take several years for the amount to be paid out. The article then quoted Rodríguez as saying:

> It was inconvenient for them (the government) to fight it because of the Circuit's (of Boston) decision and because of the implications made by both the federal and Circuit courts. . . . This case is a vindication of the plaintiffs' rights. It is never payment for the damages suffered, because that will not cover the loss of the lives of Manuel Ortiz and Leopoldo Sanabria; that has no price. Or the death of Hector Merced; that has no price, and the damage will never be compensated, but at least there is that implicit recognition of the violation of the plaintiffs' civil rights.

No plaintiffs were quoted in the piece, nor were any of the plaintiffs' attorneys.

The defendants claimed "breach," or more precisely "violation," triggering civil contempt proceedings that eventually targeted Rodríguez. After conducting an evidentiary hearing, the district court found that Rodríguez made only the quoted statement directly attributed to him. The district court further found that the quoted statement violated the order because it revealed a term or condition of the settlement agreement.

## II.

### A.

Rodríguez's first argument on appeal is that there is insufficient evidence to support the finding that he made even the

statement directly attributed to him.  We easily reject this argument.  The article itself was entered into evidence at the contempt hearing without objection or restriction.  It expressly identified Rodríguez as the source of the quoted statement. Rodríguez, in turn, never testified otherwise.  Such a record provides ample support for the district court's fact finding in a civil contempt proceeding.  See Langton v. Johnston, 928 F.2d 1206, 1218-19 (1st Cir. 1991).

This brings us to Rodríguez's second, and better, argument:  that the statement he was found to have made did not violate the court's order.  As a preliminary matter, we eschew any broad reading of the court's order when determining whether Rodríguez's statement violated it.  As construed by the district court and the parties, the order constituted a prior restraint on speech.  Such restraints bear "a heavy presumption against [their] constitutional validity," N.Y. Times Co. v. United States, 403 U.S. 713, 714 (1971) (quoting Bantam Books, Inc. v. Sullivan, 372 U.S. 58, 70 (1963)), and even when valid are narrowly construed, cf. Se. Promotions, Ltd. v. Conrad, 420 U.S. 546, 555-56 (1975) (exceptions to the doctrine of prior restraint are few and narrow). Principles of contempt similarly counsel against any broad reading of the presumed order:  a finding of contempt for violating a court order should issue only "when there is clear and convincing proof of a violation of a court decree."  Burke v. Guiney, 700 F.2d 767,

769 (1st Cir. 1983) (quoting Erhardt v. Prudential Grp., Inc., 629 F.2d 843, 846 (2d Cir. 1980)); see also In re Grand Jury Investigation, 545 F.3d 21, 25 (1st Cir. 2008) ("[A] complainant must prove civil contempt by clear and convincing evidence . . . [and] the putative contemnor 'must have violated a clear and unambiguous order that left no reasonable doubt as to what behavior was expected and who was expected to behave in the indicated fashion.'" (quoting Project B.A.S.I.C. v. Kemp, 947 F.2d 11, 17 (1st Cir. 1991))).  Finally, while we review the district court's findings of fact for clear error and its ultimate decision to impose a contempt sanction for abuse of discretion, United States v. Saccoccia, 433 F.3d 19, 27 (1st Cir. 2005), "our review will proceed more searchingly when, as here, we are confronted with a finding of contempt than when we are called upon to consider a finding exonerating a putative contemnor from a charged contempt," Project B.A.S.I.C., 947 F.2d at 16.

Employing these principles of law, we cannot agree with the district court that Rodríguez violated the order.  In finding a violation, the district court pointed to the Report's summary of the portion of the parties' settlement agreement disavowing any concession of liability.  The Report's summary states:  "The settlement agreement shall not signify acceptance of liability regarding the facts alleged in the complaint."  The district court found that Rodríguez revealed the substance of this clause.  It

- 8 -

reasoned that by saying the settlement was "a vindication of the plaintiffs' rights" and "[b]y stating that the settlement agreement was an 'implicit recognition of the violation of plaintiffs' civil rights,' [Rodríguez] [was] indicating that defendants [were] liable to plaintiffs." For two reasons, we disagree.

First, Rodríguez's statement to the press was silent on the matter of liability. Rodríguez instead addressed the rights of the plaintiffs. Defendants and the district court seem to assume that a recognition of the violation or vindication of plaintiffs' rights clearly equals a concession of liability by the defendants. As we ourselves have previously recognized, however, in the context of an order that a plaintiff not state that a settlement was "evidence of [or] an admission of liability," a statement that "the settlement vindicated [plaintiff's] contention that his firing was illegal" is "ambiguous in itself." Burke, 700 F.2d at 769-70. That ambiguity becomes inescapable in a civil rights suit like the one settled in this instance, where a violation of rights does not establish liability. Rather, in a civil rights suit such as the underlying action here seeking damages from individual government officials, a plaintiff must also defeat defenses of absolute or qualified immunity. See Maldonado Santiago v. Velazquez Garcia, 821 F.2d 822, 829 (1st Cir. 1987) (liability in a suit brought under § 1983 implicates

questions not only of culpability, but also of immunity and causation); see also Solis-Alarcón v. United States, 662 F.3d 577, 583 (1st Cir. 2011) (observing that government officials are liable in tort under Commonwealth law only where attaching liability would strike a balance between citizens' rights to be compensated when injured by the government officials' wrongful or negligent acts and those government officials' duty to vigorously investigate alleged criminal activity, the same "view that animates federal qualified immunity doctrine").  In the past year alone, courts in this circuit have decided at least eighteen cases in which the Commonwealth and/or its officials have argued that there is no liability even if a plaintiff's rights were violated.[2]  It

---

[2] See, e.g., López-Erquicia v. Weyne-Roig, No. 15-2278 (1st Cir.), dkt. no. 33, at 6 (Feb. 23, 2016); Marrero-Méndez v. Calixto-Rodríguez, 830 F.3d 38, 41 (1st Cir. 2016); Guadalupe-Báez v. Pesquera, 819 F.3d 509, 517 (1st Cir. 2016); Miranda-Rivera v. Toledo-Dávila, 813 F.3d 64, 72–73 (1st Cir. 2016); Román v. Oliveras, 637 F. App'x 616, 618 (1st Cir. 2016); Escalera-Salgado v. United States, No. 14-1352, 2016 WL 5374095, at *3 (D.P.R. Sept. 26, 2016); García-Melendez v. Rodríguez Gonzalez, No. 14-1560, 2016 WL 5173240, at *8 (D.P.R. Sept. 21, 2016); Pagán González v. Moreno, No. 14-1899, 2016 WL 4384715, at *3 (D.P.R. Aug. 16, 2016); Aviles v. Figueroa, No. 12-1200, 2016 WL 3920171, at *9 (D.P.R. July 15, 2016); Ramos-Torres v. Municipality of Caguas, No. 12-1706, 2016 WL 3676201, at *2 (D.P.R. July 5, 2016); Gómez-Cruz v. Fernández-Pabellón, No. 13-1711, 2016 WL 3511557, at *7–8 (D.P.R. Mar. 31, 2016); Gonzalez v. Otero, 172 F. Supp. 3d 477, 494 (D.P.R. 2016); Mercado-Ruiz, v. Carazo, No. 14-1372, 2016 WL 1171508, at *3 (D.P.R. Mar. 23, 2016); Diaz-Morales v. Rubio-Paredes, 170 F. Supp. 3d 276, 287–88 (D.P.R. 2016); Díaz Rodríguez v. Figueroa-Sancha, No. 12-1243, 2016 WL 1247208, at *1 (D.P.R. Feb. 24, 2016); Sánchez v. McClintock, No. 11-1542, 2016 WL 344528, at *5–6 (D.P.R. Jan. 27, 2016); García-Matos v. Bhatia-Gautier, 156 F. Supp. 3d

therefore follows that one could imply, or even state, that a plaintiff's rights were violated and vindicated without revealing whether the defendants bore any liability.

Second, even if Rodríguez's statement could be construed as a statement that defendants were liable, such a statement would not have revealed any of the terms and conditions of the settlement agreement which, after all, contained only a disavowal of liability. A statement that defendants were liable would have been a false description, rather than a disclosure, of a settlement term. It might perhaps have subjected Rodríguez to a libel claim, but it would not have subjected him to a claim that he violated the court's order.

For these reasons, the district court's contempt order was clearly erroneous and cannot stand. The concomitant monetary sanction the court imposed falls with it.

**B.**

Rodríguez also challenges the district court's decision to refer him for ethical review before the Puerto Rico Supreme Judicial Court. It is not clear what kind of remedy he seeks from us, but he argues on appeal that the district court "abused its discretion when it referred [him] to the Puerto Rico Supreme Court for ethical review" because his conduct comported with the ethical

---

245, 256–57 (D.P.R. 2016); Torres-Rivera v. Garcia-Padilla, 156 F. Supp. 3d 237, 244 (D.P.R. 2016).

rules applicable in the district court.  Defendants contend that the district court's referral was not a judicial decision and we therefore lack jurisdiction to review it, and that, in any event, the district court did not abuse its discretion because Rodríguez acted unethically.

We see no need to order any "un-referral."  The district court was clear that it made a referral to the Supreme Judicial Court of the Commonwealth only because the district court viewed Rodríguez as having violated a court order.  Our holding in this appeal eliminates the basis for the referral.  Rodríguez may certainly send our opinion to the Puerto Rico Supreme Judicial Court, and he offers no reason to think that some order reversing the referral would have any different effect.

## III.

Finally, we offer a note of caution concerning the parties' apparent presumption that a federal court should order compliance with settlement agreements.  It is often helpful and most certainly proper for a judicial officer who is not adjudicating a case to conduct mediation.  See, e.g., P.R. Local R. 83J.  In the normal successful event, the mediation may result in a private contract between the parties, followed by dismissal. Occasionally, there may be a reason for the court to retain jurisdiction to hear a later claim that a party has breached the contract.  Sometimes, too, at least where a principal form of

relief sought in the underlying action is injunctive, it may be appropriate to go further and turn the settlement agreement into a court order. See, e.g., Hawkins v. Dep't of Health & Human Servs. for N.H., Comm'r, 665 F.3d 25, 30-31 (1st Cir. 2012) (settlement resulted in consent decree that could be enforced by seeking a contempt citation for a violation). Taking such a step, though, calls for restraint and careful consideration by the court because it has duties and interests that may well differ from those of the parties. Here, for example, in a case that did not in any way center on a request for an injunctive remedy, the district court nevertheless found itself issuing what all involved treated as a prior restraint on speech aimed at preventing the public from knowing what public officials were doing in a matter of well-warranted public interest. And when the parties then claimed breach, the district court found itself with the more difficult task of defending the sanctity of its own order rather than deciding a breach of contract dispute.

## IV.

Rodríguez did not violate what the parties all treat as a confidentiality order issued by the district court. The court's contempt finding and sanction were therefore based on clearly erroneous findings of fact. Accordingly, we reverse the decision of the district court and vacate the contempt and sanctions order. Costs are assessed against the appellees.